## BRODERICK & BASCOM ROPE CO. v. MANOFF.

### No. 5197.

Circuit Court of Appeals, Sixth Circuit.

June 12, 1930.

Marston Allen, of Cincinnati, Ohio (Allen & Allen, of Cincinnati, Ohio, and Calkins, Storey & Nye, of Toledo, Ohio, Hugh K. Wagner, of St. Louis, Mo., on the brief), for appellant.

Smith, Baker, Effler & Eastman, of Toledo, Ohio, for appellee.

Before DENISON, HICKS, and HICKENLOOPER, Circuit Judges.

DENISON, Circuit Judge.

The appellant rope company makes a special rope adapted for towing disabled motorcars. It might have called its product a tow rope for automobiles, or an automobile tow line. Developing this latter name through the stage Auto-Tow-Line it devised a fairly arbitrary though suggestive name—Autowline. This was registered as a trademark; and, in so far as the word had a descriptive character, the rope company eventually also claimed rights upon a secondary meaning that the article so marked was its product. The Metal Fibre Rope Company infringed this trade-mark, using (with hyphens) the identical word Au-Tow-Line as the name of its product. An infringement suit in the court below resulted in a decree for plaintiff by default. Plaintiff's exclusive right to the mark Autowline, both as a legal trade-mark and through a secondary meaning ownership, was adjudicated by this decree; and it enjoined the defendant and its officers, agents, etc., from marking its articles with the trade-mark, either in the form Autowline, or in the form Au-Tow-Line. Manoff, the appellee, was the chief owner and general manager of the Fibre Company, and a copy of the injunction was served upon him. Almost immediately thereafter, using the assumed name, "Wilman Company," he began distributing a similar product prominently marked with the name Auto-Tow-Line, and used the same name upon his circulars. Thereupon the present contempt proceeding was brought against him. The court below dismissed it.

The question chiefly argued by counsel and the one upon which the dismissal below was based, is whether the word, or the compound word, Auto-Tow-Line is so far merely descriptive of the article that Manoff, or any other manufacturer, has the right to use it in spite of the plaintiff's trade-mark. In

354

support of plaintiff's claim of exclusion, it is said that when words primarily descriptive have, through a secondary meaning, come to indicate an article produced by plaintiff, a competitor may not use them as the name of his product as he would use a trade-mark, and it is also urged that a valid trade-mark which has developed out of descriptive words into an arbitrary form may not be simulated by a half way or pseudo return to the original words. We do not find it necessary to consider these broad questions; we think Manoff was disqualified to claim the full competitive rights which might be open to a stranger. He was clearly privy to the former decree and bound by it as if he had been named as a party; the name Au-Tow-Line was adjudged to be plaintiff's valid trade-mark; he was enjoined from using it, and the effect of the injunction, of course, was to enjoin also the use of any word in such close imitation or resemblance as to mislead the public; it is obvious that the ordinary purchaser would be confused or misled by the similarity between Au-Tow-Line and Auto-Tow-Line, when prominently displayed as if the proprietary name of two substantially similar articles. To permit Manoff to continue his infringing business with merely this change in the characterizing name is to make the decree futile and to disparage the power of the court to give relief against trade larceny. The situation is the same as it was in Coca-Cola Co. v. Gay-Ola Co., 200 F. 720. We there held that though the public generally was entitled and the defendant originally had been entitled to use a common and natural color for a beverage, the defendant, who had adopted that color as a part of his deliberate scheme to defraud the public into accepting his article as that of the plaintiff, could not continue to use it in carrying on the same business, even though he had dropped his fraudulent and unpermissible resemblances. The defendant there, and Manoff here, had organized and built up a business based upon a fraudulent appropriation of what belonged to the plaintiff. To permit them to continue without interruption, and to the full scope of identity permitted to an honest competitor, would be to preserve for them a good will acquired through fraud. The due protection of trade-mark and similar rights requires that a competitive business, once convicted of unfair competition in a given particular, should thereafter be required to keep a safe distance away from the margin line—even if that requirement involves a handicap as compared

with those who have not disqualified themselves.

We conclude that Manoff's use of Auto-Tow-Line involved a contempt of the former decree, and should have been treated accordingly. It should be also noted that he continued a substantial use of the precise word forbidden, Au-Tow-Line. He claims this was an oversight; that is a claim which would affect the punishment, but can hardly serve entirely to excuse.

The order appealed from is reversed, and the case remanded for further appropriate proceedings.