UNITED STATES of America, Plaintiff-Appellee,

v.

Oscar GONZALEZ–RODRIGUEZ, Defendant-Appellant.

No. 74–2572.

United States Court of Appeals, Ninth Circuit.

March 19, 1975.

Mary O'Hare, Federal Public Defenders (argued), San Diego, Cal., for defendant-appellant.

Herbert Hoffman, Asst. U. S. Atty. (argued), Harry D. Steward, U. S. Atty., Jeffrey F. Arbetman, Asst. U. S. Atty., on the brief, for plaintiff-appellee.

Before DUNIWAY and WRIGHT, Circuit Judges, and LANE,* Judge.

## OPINION

LANE, Judge of the United States Court of Customs and Patent Appeals:

Appellant was found guilty and was convicted of the offense of exportation of arms and ammunition as set forth in Count 2 of the indictment. Count 2 specifies violation of Title 22, United States Code, Sections 401 and 1934 and Title 22, Code of Federal Regulations, Section 127.01.

A special agent of the United States Bureau of Alcohol, Tobacco and Firearms was informed by sales clerks of two surplus stores in Los Angeles on September 4, 1973 that Juan Emiglio Bonilla and Benito Alberto Hernandez had purchased a number of M-1 carbines (Plainfield). The clerks also provided a description of the automobile in which the rifles were transported. The agent went to the Bonilla residence and observed firearms being transported from the trunk of the vehicle to Bonilla's residence, and later that night observed firearms being transferred from Bonilla's residence to a pickup truck equipped with a camper shell. Special agents of the Bureau of Alcohol, Tobacco and Firearms and the United States Customs Service established continuous surveillance of the defendants and the pickup truck.

The agents observed a larger camper shell being built and placed on the pickup truck. Two other defendants (not parties to this appeal) were observed loading articles into the camper and discarding empty rifle boxes. The agents also observed the camper being loaded with a quantity of ammunition and M-1 carbine magazines, and thereafter panelling being installed in the interior of the camper. A check with the Munitions Control Section, United States Department of State, revealed to the agents that no firearms export permit had been issued to the appellant, Bonilla, Hernandez or to the other two defendants.

On November 6, 1973 agents observed the appellant drive the camper from Redondo Beach, California to the international border at San Ysidro, California. The camper was stopped approximately fifty feet from the international border after it had passed the last alternate road not leading to the border, and appellant was asked his destination. When appellant replied "Mexico" he was arrested and the camper was thereafter searched. The search disclosed 66 .30 caliber carbine rifles, 240 .30 caliber magazines and 8,245 rounds of .30 caliber ammunition.

The question presented for review is whether circumstances existed which justified stopping and arresting the appellant and searching the vehicle he was driving without first obtaining a warrant. We conclude that such circumstances did exist.

* Honorable Donald E. Lane, Judge of the United States Court of Customs and Patent Appeals, sitting by designation.

## I

The fundamental rule in this area of law is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); Coolidge v. New Hampshire, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Appellant urges that the facts of this case do not satisfy any established exception to the warrant requirement; and that the facts demonstrate that ample time and justification existed so that a warrant should have been obtained prior to the search. Appellant specifically urges that the government agents who conducted the continuous surveillance which ultimately led to appellant's arrest had probable cause to obtain a search warrant in early October 1973, over a month before the search and seizure of the camper was made.

■ It is established that no amount of probable cause can justify a warrantless search or seizure absent "exigent circumstances." Incontrovertible testimony of the senses that an incriminating object is on the premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, the Supreme Court has stated and enforced the basic rule that the police may not enter and make a warrantless seizure. Coolidge v. New Hampshire, *supra*, 403 U.S. at 468, 91 S.Ct. 2022; United States v. Church, 490 F.2d 353, 355–56 (9th Cir. 1973) (opinion of Aldrich, J.). The Fourth Amendment requirement is applicable to a search or seizure under any statute. Nathanson v. United States, 290 U.S. 41, 47, 54 S.Ct. 11, 78 L.Ed. 159 (1933).

## II

The statutes which appellant has been convicted of violating establish federal control of the export of arms, ammunition and implements of war and proscribe the illegal exportation of war materials. Persons who wish to export arms and ammunition within the statute are required to obtain a license. Articles *which are intended to be* or *which are being removed from the United States in violation of law* are subject to seizure and forfeiture, together with the vehicle used to transport them. It is uncontested that appellant had not obtained the required export license.

The fundamental defect in appellant's argument is that mere possession of the arms and ammunition in the camper was not unlawful; it is only their exportation without a license which was unlawful. Although the government agents who conducted the continuous surveillance of the camper had probable cause in early October 1973 to believe that arms and ammunition had been placed in the camper, that activity was not unlawful absent evidence of intent to export. There is no evidence of record that appellant or anyone else intended to export the arms in early October 1973. Appellant's counsel urges that we must infer that the arms and ammunition placed in the camper were intended to be exported from the United States without the required export license. That conclusion does not follow from these facts. We note for example that the articles placed in the camper could have been transported in any direction, and not necessarily across an international border. Furthermore, the required export license might have been obtained at any time. There being no evidence of intent to export without a license, the government agents could not have obtained a search warrant in early October 1973.

■ During the somewhat prolonged surveillance by the government agents, appellant's activities became suspicious in inverse proportion to the distance between the camper he was driving and the international border. By the time the camper was stopped approximately fifty feet from the international border, after it had passed the last alternate road not leading to the border, the

government agents had probable cause to believe that a crime was in the course of its commission in their very presence. The earlier events certainly disclosed ample grounds to justify the following of the camper, the subsequent stopping thereof, and the questioning of appellant by the government agents. This interrogation produced further evidence that arms and ammunition in the camper *were being removed* from the United States in violation of law. The evidence gave the government agents indisputable probable cause for the arrest and a search incident to arrest.

## III

When an arrest is made, it is reasonable for the arresting officer to search the person arrested and the area within his immediate control within which he might gain possession of a weapon. Chimel v. California, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The purpose of contemporaneous search incident to an arrest is to seize weapons and other things which might be used to assault the arresting officer, and to prevent the destruction of evidence. There is no dispute that the search here considered was for the specific purpose of seizing arms and ammunition. The question is whether the camper constituted an area within appellant's immediate control within which he might gain possession of one of the weapons contained therein. At the time of his arrest appellant was driving the camper. A camper or other vehicle is both mobile and within the unique control of the driver. Under these circumstances we believe that the scope of the search incident to arrest was valid. Chimel v. California, *supra*, 395 U.S. at 764 n. 9, 89 S.Ct. 2034; United States v. Church, *supra*; accord, United States v. Harflinger, 436 F.2d 928, 933–35 (8th Cir. 1970).

## IV

Appellant moved at oral argument that we remand this case to the district court for further testimony with respect to the issue of probable cause. In general, motions for new trials must be addressed to the sound discretion of the district court. The appellate court may not substitute its discretion for that of the trial judge. Gage v. United States, 167 F.2d 122, 125 (9th Cir. 1948). The anticipated defeat of a claim in a court having jurisdiction cannot be pleaded as a basis for bypassing that appropriate tribunal and attempting to establish original jurisdiction in an appellate court where such jurisdiction does not exist. Accord, Independent Nail & Pack. Co. v. Stronghold Screw Prod., 215 F.2d 434, 438 (7th Cir. 1954). Appellant's motion is denied.

Appellant has also filed a motion to vacate judgment and/or remand to the trial court for further hearing on the motion to suppress evidence. Appellant argues that an article concerning the present case published in the Los Angeles Times on November 17, 1974 is evidence to support appellant's theory that ample probable cause to obtain a search warrant existed weeks or months prior to the actual search and seizure of the camper. For the reasons we have already discussed, we have concluded that in view of the facts of this case a search warrant was not required. Appellant's motion is denied.

The judgment of the district court is affirmed.

DUNIWAY, Circuit Judge (concurring):

I concur in the judgment, but for somewhat different reasons from those stated in Judge Lane's opinion.

*First*: I think it at least arguable that the agents had information, before the vehicle started for the border, sufficient to give them probable cause to believe that the defendants intended to export the munitions. If so, they could have obtained a warrant. It does not follow, however, that they were required to do so. It was proper for them to wait until they had more evidence before seeking to search.

The applicable principle is well stated by Justice Blackmun in Cardwell v. Lewis, 1974, 417 U.S. 583 at 595-6, 94 S.Ct. 2464, 2472, 41 L.Ed.2d 325:

Assuming that probable cause previously existed, we know of no case or principle that suggests that the right to search on probable cause and the reasonableness of seizing a car under exigent circumstances are foreclosed if a warrant was not obtained at the first practicable moment. Exigent circumstances with regard to vehicles are not limited to situations where probable cause is unforeseeable and arises only at the time of arrest. *Cf. Chambers* [v. Maroney], *id.*, [399 U.S. 42] at 50-51 [90 S.Ct. 1975, 26 L.Ed.2d 419]. The exigency may arise at any time and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action.

To the same effect is United States v. Church, 9 Cir., 1973, 490 F.2d 353, 356 (opinion of Aldrich, J.) 357 (opinion of Duniway, J.). What we have in the case at bar is excellent police work, not a violation of the Fourth Amendment.

*Second*: I agree that when the camper was stopped just before it reached the border, the agents had more than probable cause to seize and search it. At that time, they knew that it contained munitions, they knew that no export license had been issued, and they knew that the defendant was then engaged in exporting the munitions.

I do not think, however, that our decision should be based upon Chimel v. California, 1969, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. The defendant was in the driver's seat of the camper. I do not see how the munitions hidden inside the camper can be said to have been "within his immediate control" as that phrase is used in *Chimel*. To get at them, he would have had to get out of the driver's seat, open the door of the camper, enter it, and extract a weapon from its hiding place. To describe these munitions as being in an "area into which an arrestee might reach in order to grab a weapon" (395 U.S. at 762, 89 S.Ct. at 2040) is, I submit, to stretch the *Chimel* holding beyond the breaking point.

Rather, I think that the case falls squarely within the "automobile exception" to the warrant requirement of the Fourth Amendment, first announced in Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, and followed by all of the federal courts ever since. On that ground, I conclude that the search was entirely proper.