**WOLFARD GLASSBLOWING COMPANY, Plaintiff–Appellee,**

v.

**Willy VANBRAGT; Mary Vanbragt, individually, and doing business as Zodiac Expressions, Defendants–Appellants.**

No. 96–35287.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 7, 1997.

Decided July 7, 1997.

Thomas M. Singman, Oakland, CA, for plaintiff–appellee.

Frank J. Dykas, Boise, ID, for defendants–appellants.

Before: CANBY and TASHIMA, Circuit Judges and SILVER *, District Judge.

CANBY, Circuit Judge.

Willy and Mary Vanbragt, doing business as Zodiac Expressions, appeal the district court's judgment that held them in civil contempt. The district court concluded that Zodiac had violated a consent judgment and permanent injunction that prohibited it from making or selling oil lamps that are "colorable imitations" of the Wolfard Glassblowing Company's oil lamps. We conclude that the district court did not err in finding that

Zodiac made and sold lamps that are colorable imitations of Wolfard's lamps. The district court accordingly did not abuse its discretion in holding Zodiac in civil contempt, and we affirm its judgment.

## BACKGROUND

Wolfard makes and sells the "Wolfard Lamp," which is a glass oil lamp. In January 1990, Wolfard registered a trademark for the Wolfard Lamp with the Patent and Trademark Office under a trade dress theory. Wolfard's mark consists of "the overall visual impression of a glass oil lamp design featuring a spherical oil reservoir suspended within a glass cylinder by a glass stem attached to the inside wall of the cylinder."

In 1989, Wolfard brought an unfair competition action against Zodiac in an effort to stop Zodiac from selling their "Virgo Lamps," which Wolfard contended were copies of the Wolfard Lamp. The Virgo Lamps at that time were virtually identical to the Wolfard Lamp, consisting of a glass cylinder with a suspended spherical oil reservoir.

In April 1990, after Wolfard had registered its trademark, Wolfard and Zodiac agreed to settle the unfair competition action. Pursuant to their agreement, the district court entered a consent judgment and permanent injunction that enjoined Zodiac from making, distributing, selling, or advertising any oil lamp that was a "simulation, reproduction, counterfeit, copy, or colorable imitation" of the Wolfard Lamp design. In the consent judgment, Zodiac stipulated that the Wolfard Lamp trademark was valid and that the Virgo Lamp infringed Wolfard's trademark.

In 1995, Wolfard filed a motion in the district court for a contempt judgment. Wolfard alleged that Zodiac had violated the consent decree by selling lamps that were only slightly different from the original Virgo Lamps. Zodiac was selling lamps under the "Virgo" name that consisted of a glass cylinder with a suspended oil reservoir that was shaped like an inverted tear drop, not a

---

\* The Honorable Roslyn O. Silver, United States District Judge for the District of Arizona, sitting   by designation.

sphere as in the Wolfard Lamp and the original Virgo Lamp.

The district court found that the new Virgo Lamps were a "colorable imitation" of the Wolfard Lamp, in violation of the consent decree. The district court therefore held Zodiac in civil contempt. The district judge based his conclusion primarily on a visual comparison of the Wolfard Lamp and the new Virgo Lamp. The district judge also considered "counsels' arguments." The district court ordered Zodiac to comply with the 1990 consent judgment, destroy all "offending" lamps, and pay the costs and attorneys' fees that Wolfard had incurred in bringing the contempt motion.

## ANALYSIS

■ For Wolfard to succeed in its motion for civil contempt, it had to show by clear and convincing evidence that Zodiac violated the consent judgment beyond substantial compliance, and that the violation was not based on a good faith and reasonable interpretation of the judgment. *See In re Dual–Deck Video Cassette Antitrust Litigation,* 10 F.3d 693, 695 (9th Cir.1993). We conclude that the district court did not abuse its discretion in determining that Wolfard had met this burden.[1]

The basic issue is whether Zodiac violated the consent judgment by marketing "colorable imitations" of Wolfard's oil lamps. *Id.* The term "colorable imitation" in trademark law means "any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive." 15 U.S.C. §§ 1127, 1114(1) (1994). In determining whether a defendant has committed trademark infringement by colorable imitation, we have employed a number of factors to determine the likelihood of confusion. *See Eclipse Associates Ltd. v. Data General Corp.,* 894 F.2d 1114, 1116–17 (9th Cir.1990). For example, we have indicated that the court may consider the similarity of the defendant's mark to the plaintiff's trademark, the goods' marketing channels, evidence of actual consumer confusion, and numerous

other related factors. *Id.* at 1117. A plaintiff seeking to establish infringement in the first instance would wish to marshal evidence on as many of these factors as possible.

■ As the district court noted, however, the issue here is not whether Zodiac infringed Wolfard's trademark. The issue is whether Zodiac violated a consent judgment. *See Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.,* 689 F.2d 885, 889 (9th Cir.1982). We agree with the Second Circuit that a plaintiff in Wolfard's position, who already has a judgment establishing that the defendant has infringed, is not required to muster all of the evidence it would need to make out an original infringement case in order to prove contempt.

> When enforcing injunctions that enjoin use of any mark confusingly similar to the protected mark, courts should not adjudicate issues such as product proximity but should simply evaluate whether or not the new mark is confusingly similar to the protected mark.... Although the terms of such an injunction impose a heavier burden on an infringing party with a redesigned mark than is imposed on a newcomer with a similar mark, "a party who has once infringed a trademark may be required to suffer a position less advantageous than that of an innocent party."

*Wella Corp. v. Wella Graphics, Inc.,* 37 F.3d 46, 48 (2d Cir.1994) (quoting *Oral–B Labs. v. Mi–Lor Corp.,* 810 F.2d 20, 22–23 (2d Cir. 1987)). Wolfard would have had no incentive to settle its infringement case if the resulting injunction could not be enforced without renewed litigation of all of the elements of its original infringement claim. *See id.* Thus several of the marketing factors urged by Zodiac are not in issue. *See id.* The question is no longer trademark infringement; it is whether Zodiac's new lamp is a "colorable imitation" of Wolfard's lamp. We thus conclude that Wolfard, in order to establish a violation of this consent decree, need not prove a likelihood of consumer confusion in

---

1. We review for abuse of discretion a district court's civil contempt order. *United States v.*

*Bodwell,* 66 F.3d 1000, 1001 (9th Cir.1995).

the same manner that we would require in a trademark infringement case.

■ This conclusion is consistent with the rule that an infringer must keep a fair distance from the "margin line." *See Plough, Inc. v. Kreis Labs.*, 314 F.2d 635, 639 (9th Cir.1963). Zodiac admitted in the consent judgment that its original Virgo Lamps infringed Wolfard's trademark. Zodiac should not then be able to make minimal changes in its product in order to test the outer boundaries of that judgment; Zodiac had a duty to stay well away from Wolfard's trademark:

> [A trademark infringer] should have its conduct carefully scrutinized in future use and should not be allowed to claim the same leniency accorded a good faith user who starts use of the mark which the enjoined defendant has shifted to. Otherwise, the enjoined defendant could simply make a tiny change and start a new trademark contest all over again in the context of the contempt hearing as to the use of the "new" format.

*McCarthy on Trademarks* § 30.13[1] (1996); *see also Eskay Drugs, Inc. v. Smith, Kline & French Labs.*, 188 F.2d 430, 432 (5th Cir. 1951). Of course, the decree does not require Zodiac to stay so far away from the margin line that it is put out of the glass-oil-lamp business. Zodiac's lamps still must be "colorable imitations" of the Wolfard Lamp to constitute a violation of the consent judgment.

The district court in this case concluded that Zodiac's new Virgo Lamp was a colorable imitation of the Wolfard Lamp. The district judge based his decision primarily on a visual comparison of the two lamps. The new Virgo Lamp looks exactly like the original, admittedly infringing, Virgo Lamp except that the new Virgo Lamp's oil reservoir is shaped like an inverted tear drop; the Wolfard Lamp and the original Virgo Lamp had spherical oil reservoirs. The district judge also considered "counsels' arguments," which apparently included some of the likelihood-of-confusion factors in the parties' moving papers. We note that on this point the record is rather thin. We nonetheless conclude that the district court could properly determine from visual comparison of the lamps that the similarity between them would probably cause consumers to mistake Zodiac's lamp for Wolfard's, and that the Virgo lamp consequently was a "colorable imitation" of Wolfard's. A colorable imitation is a product that is likely to cause confusion. 15 U.S.C. § 1127 (1994). A lamp obviously need not look exactly like the Wolfard Lamp in order to confuse consumers. *See Eskay Drugs*, 188 F.2d at 431–32. Even under the likelihood-of-confusion test for trademark infringement, which Zodiac urges us to apply, a mark need not be an exact copy of the plaintiff's trademark in order to infringe it. *See Eclipse*, 894 F.2d at 1117. Having reviewed exhibits portraying the two lamps, we conclude that the district court did not clearly err in finding that the lamps were sufficiently similar that they were likely to cause confusion. *See Pacific Telesis Group v. Internat'l Telesis Communications*, 994 F.2d 1364, 1367 (9th Cir.1993) (likelihood of confusion reviewed only for clear error).

■ Zodiac contends that the district court erred because it did not explicitly consider likelihood-of-confusion factors such as those we delineated in *Eclipse Associates*, 894 F.2d at 1117 n. 2 & 3. Even in the context of an initial trademark infringement action, however, a district court need not "recite and apply" every factor; they are merely "helpful guidelines." *Id.* at 1118. In any event, we are not in the context of an initial infringement action; for reasons we have already pointed out, the district court was not required to establish every element of an infringement claim in order to conclude that Zodiac had violated the consent decree. *See Eskay Drugs*, 188 F.2d at 431.

The district court also did not abuse its discretion in concluding that Zodiac could not avoid a finding of contempt on the ground that its violation of the decree was based on a good faith and reasonable interpretation of its terms. *See In re Dual–Deck Video*, 10 F.3d at 695. Zodiac argues that it reasonably interpreted the consent judgment to prohibit it only from making glass oil lamps with a spherical oil reservoir. But such lamps would be exact copies, not colorable imitations, of the Wolfard lamp. The injunction's prohibition of "colorable imitations"

would be of no effect. The district court acted well within its discretion in concluding that Zodiac's interpretation of the decree was not reasonable or in good faith.

We conclude, therefore, that the district court did not abuse its discretion in holding Zodiac in contempt. We decline Wolfard's request for attorneys' fees under Fed. R.App. P. 38 and 28 U.S.C. § 1927, however. In light of the lack of precedent in this circuit regarding some of the issues raised on appeal, Zodiac's appeal was not "wholly without merit." *See Taylor v. Sentry Life Ins. Co.,* 729 F.2d 652, 656 (9th Cir.1984).

## CONCLUSION

The district court did not abuse its discretion in deciding that Zodiac violated the consent judgment because it made and sold colorable imitations of the Wolfard Lamp. The district court also did not err in concluding that Zodiac's violation was not based on a good faith, reasonable interpretation of the consent judgment. The judgment of the district court is

**AFFIRMED.**